DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Toledo Municipal Court wherein, following a jury trial, appellant, David Heath, was found guilty of assault and not guilty of the charge of menacing. Appellant was sentenced to six months in the Correctional Center of Northwest Ohio, but was released on bond pending the outcome of this appeal. Appellant timely appealed his conviction and raises the following sole assignment of error:
 {¶ 2} "The verdict was against the weight of the evidence."
 {¶ 3} This case arose from an incident on August 18, 2001, wherein appellant was involved in a confrontation with Matthew Dibble and Christopher Guhl. At the time, Dibble and Guhl were both 15 years old and appellant was in his late thirties. Dibble weighed approximately 115 pounds and appellant weighed approximately 280 pounds. The incident occurred when Dibble either threw or flipped a piece of metal 20 to 30 feet into appellant's backyard, over a 6 foot privacy fence, which was located at the back of appellant's property, abutting the alley. According to appellant, the piece of metal, which was approximately ten inches in length, struck him in the hand, causing him injury and nearly hitting his young child. By all accounts, appellant jumped over a chain link fence, which ran along the side of appellant's yard, and into the alley to confront Dibble and Guhl. The version of events are described very differently by the prosecution and defense witnesses.
 {¶ 4} According to Dibble and Guhl, they were walking in the alley behind appellant's home, "cleaning" it up. This cleanup consisted of picking up nails and knocking debris, "like hockey style," from the center of the alley with a broken pool cue. Once Dibble and Guhl were directly behind appellant's privacy fence, Dibble testified that "the stick caught the piece of metal and threw it up in a trajectory over the fence." Having seen appellant in his yard prior to hitting the metal over the fence, Dibble testified that he got scared when he "flipped" the metal into appellant's yard, dropped the pool cue, and took off running down the alley. However, feeling that his actions were accidental and that he had done nothing wrong, Dibble stopped running, approximately one-half block down from appellant's yard, and turned around to try and explain to appellant that it was an accident. Both boys testified that appellant stated, "That's no f**king accident, man," and punched Dibble twice with his fists, once on each side of his face, and then "belly-butted" Dibble to the ground. While Dibble was on the ground, appellant allegedly slipped on Dibble's left hand and kicked Dibble in the side, saying, "That's an accident too, mother f**ker." Dibble then picked up his shoe that had been knocked off and went home.
 {¶ 5} In pertinent part, Dibble and Guhl additionally testified that Guhl remained in the alley during the incident, there were no other people in the alley besides them, Dibble was not holding anything when appellant approached him, and appellant never fell to the ground. Guhl, in particular, testified that he knew there were no other people in the area because he "was looking for people, too for help, but nobody was there." Both boys, however, stated that appellant did have a mark, bruise or small scab on his hand where appellant indicated he was struck by the metal.
 {¶ 6} With respect to Dibble's injuries, Dibble stated that his cheeks were swollen, he got a bloody nose and lip, had a "contusion" on his side where he was kicked, had a sore neck, and had an abrasion on his finger where it scraped on the ground when appellant stepped on it. Guhl also testified that Dibble's finger was injured, that he had a bloody nose, and that his face was "kind of puffy" and maybe had "a little bruise." However, contrary to Dibble's testimony that his lip was bleeding, Guhl stated that there was no other blood on Dibble besides his finger and nose.
 {¶ 7} After Dibble left the alley, Guhl testified that appellant walked toward Guhl, grabbed him, and "dragged" him to the front of appellant's house to take down his and Dibble's names and addresses. Guhl, however, stated that appellant never threatened him or swung at him. Once they got to appellant's house, one of appellant's neighbors, Joseph Signorelli, came over. Guhl testified that he knew Signorelli because he was a friend of Guhl's best friend's dad. Signorelli questioned appellant about what had happened and appellant allegedly replied that the boys had tried to throw a metal rod into his pool. Although Guhl admitted that he never actually spoke with Signorelli regarding the incident, Guhl testified that it did not sound to him like Signorelli had witnessed anything when he came up to ask appellant what had happened.
 {¶ 8} Not knowing Dibble's address, Guhl, appellant and Signorelli walked down to Dibble's house so appellant could get Dibble's house number. Guhl testified that as they walked along, appellant told him that "he wasn't mad at [Guhl]" and stated that he "shouldn't hang out with kids like that because [he] can get into trouble." Guhl further testified that appellant told him that if he had not seen Dibble running down the alley, but saw Guhl walking, he would have ended up beating him up instead. After returning from Dibble's house, Guhl stated that he sat in front of Signorelli's house and that Signorelli told him the best thing to do was to go home, tell his parents what happened, and call the police.
 {¶ 9} Dibble and Guhl were the only prosecution witnesses who saw the incident. Dibble's father, Robert Dibble, however, testified as to the extent of his son's injuries and the subsequent course of events that occurred when the police were called. Mr. Dibble described the injuries of his son, that he observed shortly after the incident, as follows:
 {¶ 10} "He was bleeding from his nose and from the mouth and had bruises on both cheeks, and complained his neck hurting and side hurting and getting assaulted by this person.
 {¶ 11} "* * *
 {¶ 12} "He had some, like I said, blood in his nose and his mouth. He was spitting blood out of his mouth and he had some bruises on both cheeks. He also, his hand was stepped on in the alley. He had some cuts almost down to the bone on his fingers of the left hand. I believe he said his neck hurt and his side also."
 {¶ 13} On cross-examination, Dibble's father testified that Dibble told him he was knocked down by appellant's momentum as he ran at Dibble, punching him with both fists. He also testified that he was "surprised by the lack of injury" his son sustained after being struck in the manner his son described, by a man appellant's size. He further testified that no arrests were made on the day of the incident and, therefore, he filed charges against appellant later the next week.
 {¶ 14} Officer McClellan testified that he investigated the incident that day. McClellan repeated the version of events Dibble told him that day, which were consistent with Dibble's testimony at trial. McClellan also testified that appellant had told him that, as he approached Dibble in the alley, "his momentum took him into him and they fell down." Because of the conflicting versions, no arrest was made that day and all parties were told to contact the prosecutor's office. On cross-examination, McClellan testified that he was surprised by the limited injuries, the redness, Dibble suffered as a result of allegedly being struck twice, on each side of the face, with a fist, by a man appellant's size, and given the fact that Dibble only weighed 115 pounds. McClellan further testified that other than appellant, appellant's girlfriend, Dibble, and Guhl, there were no witnesses indicated on the day of the incident.
 {¶ 15} The defense called Officer Duane Smith, who also investigated the incident. Upon questioning appellant, Smith, like McClellan, noted a slight nick or mark on appellant's hand in the area where he indicated he was struck by the metal. Smith testified that he saw the piece of metal in appellant's backyard. According to Smith, appellant was standing about 20 feet from the stockade fence when the metal came over and hit him on the hand. Smith testified that appellant was upset because he was standing with his young son when the piece came over and that it "could have easily hit the child in the head." Officer Smith was asked to opine, based on his years of investigating, whether the metal could have gone over the fence and into the backyard by having been "flipped" over in the manner Dibble described. Smith testified that he thought it was impossible. With respect to Dibble's appearance, Smith testified that "his face was kind of bruised, or red, like on each side."
 {¶ 16} The defense next called two independent witnesses who testified they witnessed the incident in the alley. Joseph Signorelli, appellant's neighbor from three houses down, testified that he knew Guhl through a friend. Signorelli also testified that although he was appellant's neighbor, he did not know appellant socially.
 {¶ 17} With respect to the incident, Signorelli testified that he saw the entire event from underneath his jacked-up car, while he was fixing the starter. Signorelli testified that he heard some kids coming up the alley and so he "kind of glanced over." He noticed that one of the kids (later identified as Dibble) had two metal rods and that he threw one over appellant's fence. Signorelli, however, could not see where it landed, given Signorelli's position and the fact that it landed on the other side of the privacy fence. Signorelli testified that once Dibble threw the piece of metal, Guhl "shot right past" him down the alley. Signorelli turned to see why he was running and saw appellant come up and grab the other rod out of Dibble's hand. At that point, both Dibble and appellant fell to the ground. Signorelli testified that appellant never struck Dibble with his fists or his feet. He also testified that he never saw Dibble with the pool cue. After falling to the ground, Dibble got up and ran down the alley in the direction Guhl had gone, going past Signorelli. Signorelli testified that he got a good look at Dibble as he shot past and that Dibble was not bleeding.
 {¶ 18} After Dibble ran down the alley past Signorelli, "about a minute later," Guhl returned, saying that he "didn't do it" and that he "didn't have anything to run for." Then, according to Signorelli, Guhl and appellant "just walked up between the house[s]." Signorelli witnessed no threats toward Guhl and testified that he was not struck by appellant in any manner. Signorelli testified that, shortly after the incident, he went into his house and came out the front because he needed to get some more tools. When he came out in the front, he saw Guhl talking to appellant. Signorelli joined up with appellant and Guhl and walked with them down to Dibble's house "because [he] wanted to see what was going on." Signorelli testified that he saw the police later, but did not come out to talk to them, "because at that point [he] still didn't know what was going on" and did not feel that it was "any of [his] business." It was not until after the police left that Signorelli went over to appellant's house to ask him "exactly what happened." At that point, Signorelli told appellant what he had seen. Signorelli testified that he described the incident for the prosecutor prior to trial.
 {¶ 19} On cross-examination, Signorelli testified that almost all of him was under the vehicle, which was on jacks, while he was fixing it, and that the side of his body, rather than his head, was pointing in the boys' direction. Signorelli further testified that he did not see Dibble hit appellant with the piece of metal in Dibble's hand, but saw Dibble "go like this" with the metal toward appellant. Although Signorelli testified that he did not see any injury to Dibble, he stated that Dibble could have received red marks on his cheeks as a result of falling on the ground.
 {¶ 20} Jeb Slate also testified on appellant's behalf and provided a similar account to that of Signorelli's. Slate testified that he was in appellant's neighbor's backyard mowing the lawn at the time of the incident. Slate testified that he saw two kids walking down the alley picking things up randomly and throwing them. He also testified that one of the kids (identified later as Dibble) had two pieces of metal. Slate testified that he saw Dibble throw one of the pieces of metal into appellant's yard, almost hitting appellant's child. According to Slate, appellant went over the chain link fence, which was adjacent to where Slate was standing, and went toward Dibble. Upon approaching Dibble, Slate testified that "the kid was going back with the other piece of metal like that," toward appellant. Appellant then grabbed the piece of metal from Dibble and they both fell down. Slate stated that appellant never struck Dibble with his fists or kicked him.
 {¶ 21} With respect to Guhl, Slate testified that he "went running down the alley after his friend threw the piece of metal" and returned a few minutes later to tell appellant that he did not throw anything, so he's not running. Slate testified that appellant never touched Guhl and that Guhl accompanied appellant without being pushed or prodded.
 {¶ 22} Slate testified that he did not know appellant personally, but, upon the request of his boss, the man whose lawn he was cutting, he contacted appellant, approximately a week after the incident, to tell him what he had seen. Slate explained that he was no longer in the area when the police arrived to give a statement, but that he had talked with the prosecutor later.
 {¶ 23} On cross-examination, Slate testified that he did not see either boy with the pool cue. He also testified that his lawn mower was off during the incident. When asked why he did not intercede, he stated that it was none of his business. Although he was nearby, Slate stated that he could not hear any conversation between appellant and Dibble clearly, and that he really was not paying attention to what was being said because he "was watching the action." When asked if appellant was on top of Dibble, Slate stated, "I didn't see him on top of him. They fell back like that. When the boy went like this, Mr. Heath grabbed the metal and they both went back." Slate reiterated that he knew appellant to say hello to him prior to the incident and that he did not know Signorelli.
 {¶ 24} Appellant also testified at trial. Appellant testified that he was in his backyard with his young son, about 30 feet from the privacy fence, fixing his camper when "a piece of metal flew over [his] fence." He testified to the incident as follows:
 {¶ 25} "I had observed two kids coming down the alley. One picked up the piece of metal, two of them, picked up two of them; threw one over the fence at me, hit my hand, cut my hand. I got a chipped bone in the hand right here from it."
 {¶ 26} Appellant then went over a fence and, as Dibble was raising the other piece of metal to hit appellant, appellant pulled the piece of metal out of Dibble's hand. Although appellant testified that they fell to the ground, he stated that he never came in contact with Dibble, hit Dibble with his fist or kick him, and did not step on his hand. Appellant stated that Dibble got up immediately and ran off. With respect to Guhl, appellant testified that he ran immediately after Dibble threw the metal and did not return until about a half a minute later saying that he "didn't throw it" and that he was "not running." Appellant then had Guhl supply him with his name and address and accompanied Guhl, with Signorelli, down to Dibble's house so that appellant could get Dibble's address. The following Monday, appellant went to juvenile court to discuss the matter with a prosecutor, but did not file charges. Appellant received a copy of the letter sent to Dibble by the juvenile court.
 {¶ 27} In pertinent part, appellant also testified that Dibble did not have a pool cue at any time. Appellant stated that the metal debris came from two doors down, on the other side of the alley, where people had taken down a pool. With respect to his witnesses, appellant stated that they came forward after it became known that the boys had pressed charges.
 {¶ 28} On cross-examination, appellant testified that he observed the boys the entire time. Appellant stated that he could see Dibble throw the piece of metal over the privacy fence because, due to a rise in the yard, he was able to see over the top of the fence. Additionally, appellant denied telling Guhl he was going to hit him and denied telling him that if they wanted to see what vandalism was, he would show them. With respect to Dibble, appellant denied all allegations that he laid hands on Dibble, belly-butted him, stepped on his hand, and swore at him.
 {¶ 29} The jury found appellant guilty only as to the charge of assault, arising out of the incident with Dibble, in violation of Toledo Municipal Code ("TMC") section 537.03(a), a misdemeanor of the first degree. TMC 537.03(a) states: "No person shall knowingly cause or attempt to cause physical harm to another."
 {¶ 30} On appeal, appellant argues that the verdict was against the manifest weight of the evidence. Under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of conflicting testimony. State v. Thompkins
(1997), 78 Ohio St.3d 380 , 387, citing, Tibbs v. Florida (1982),457 U.S. 31, 42; and State v. Martin (1983), 20 Ohio App.3d 172, 175. However, the discretionary power to reverse a judgment as being against the weight of the evidence, and grant a new trial, should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Thompkins at 387, quoting Martin at 175. In making a determination as to whether a conviction is against the manifest weight of the evidence, the appellate court, upon review of the entire record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id.
 {¶ 31} We find that this case is one of the exceptional cases wherein the evidence weighs heavily against conviction. In order to find that appellant knowingly caused or attempted to cause physical harm to Dibble, the members of the jury had to not only believe Dibble's and Guhl's version of events, but they had to believe that Signorelli and Slate were not in the alley and, in fact, fabricated their entire testimony. Based on the blatant inconsistencies between Dibble's and Guhl's testimony with respect to the nature and extent of Dibble's injuries, and in light of the existence of exonerating testimony from two seemingly disinterested witnesses, we find that the jury clearly lost its way in convicting appellant of assault.
 {¶ 32} In its entirety, we find that Dibble's and Guhl's testimony is not credible. First, it is doubtful that the 10 inch piece of metal would have been able to fly over a 6 foot privacy fence and 20 to 30 feet into appellant's backyard with a flick of a pool cue. Even Officer Smith thought that such was physically impossible. Second, it is unbelievable that an enraged appellant ran past Guhl, who was just standing there, to assault Dibble. Third, considering the following facts, we find that Dibble's physical injuries are not consistent with his and Guhl's version of events.
 {¶ 33} Dibble testified that his head "tore" around when he was hit with appellant's fists twice on each side of his face, causing him neck strain. However, by his own testimony he never even bruised. Moreover, the hospital report only indicated "mild swelling of the left lower eyelid and left cheek area." Additionally, upon review of his photograph, taken at the hospital several hours after the incident, there is no discernable injury to Dibble's face.
 {¶ 34} Also, although a bloody lip would be consistent with someone being hit in the face, we find that Dibble's bloody lip is unsubstantiated. Dibble and his father testified that his lip was bleeding and that he was "spitting blood." However, Guhl testified that besides Dibble's nose and finger, there was no other blood. Moreover, the hospital record does not support Dibble's testimony. The report states that his "tongue was intact" and that "[t]here was no trauma noted to the gums or teeth." As such, it is obvious that Dibble's mouth was examined. We find it significant that no injury to the lip was noted.
 {¶ 35} Moreover, although a bloody nose is consistent with being hit in the face, we note that it is also just as likely that Dibble received a bloody nose by falling to the pavement.
 {¶ 36} Dibble's finger was obviously injured. It had to be cleaned and covered with a bandage. Dibble, however, received no stitches and the hospital report described the injury as follows: "Exam of the left hand does reveal superficial skin avulsion and abrasion to the dorsal aspect of the left fifth finger." This is hardly the description of a cut "down to the bone" to which Dibble's father testified. Moreover, as with his bloody nose, it could have just as readily been caused during his fall to the pavement.
 {¶ 37} Dibble testified that he was kicked by appellant in his chest area and Officer McClellan noted that Dibble's side was red. However, the hospital report indicated that Dibble denied any chest discomfort at the time of his exam. We find it is illogical that Dibble would receive no discernable injury, besides, perhaps, redness to his skin, no bruising, and be free from discomfort within two hours, thereby obviating the need for x-rays or treatment at the hospital, after being kicked in the side, while lying on the ground, by a grown man twice his size.
 {¶ 38} In addition to finding that Dibble's and Guhl's testimony defies logic and, therefore, is void of believability and credibility, we find that the two independent defense witnesses, who were not appellant's friends, and were not parties to this incident, were highly credible. Neither Signorelli nor Slate had anything to gain or lose by testifying at trial. Nevertheless, they each testified that Dibble threw the piece of metal over appellant's fence, and then brandished a second piece at appellant when he approached Dibble in the alley. Given the physical unlikeliness that Dibble accidentally "flicked" the metal into appellant's backyard, we find Signorelli's and Slate's testimony that Dibble intentionally threw the metal into appellant's backyard is credible testimony. Moreover, given Dibble's brazen behavior in intentionally throwing the metal into appellant's yard, when, by his own admission, Dibble knew appellant was there, we find that it is believable that Dibble would brandish a second piece of metal when confronted by appellant. We further find that given the brevity of the situation, it is unlikely that Signorelli and Slate would have intervened.
 {¶ 39} To the extent that Dibble and Guhl testified that no one else was in the alley, we find that their testimony was not credible. First, it is likely that Dibble and Guhl did not see Signorelli, insofar as he was on the ground under his car. Second, if we believe the independent witnesses' version of events, Guhl was not even in the alley at the time of the incident to know whether someone was there or to look for help.
 {¶ 40} Finally, it is necessary to note that there was no evidence that appellant knowingly caused or attempted to cause injury to Dibble when, due to the momentum of his body, he knocked Dibble down while he was trying to relieve Dibble of the second piece of metal that he was brandishing at appellant. Therefore, based on all of the above inconsistencies with Dibble's and Guhl's testimony, and in light of the exonerating testimony of two seemingly disinterested witnesses, we find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted.
 {¶ 41} Appellant's sole assignment of error is therefore found well-taken. On consideration whereof, this court finds that appellant was prejudiced or prevented from having a fair trial and the judgment of the Toledo Municipal Court is reversed and this matter is remanded for a new trial. Court costs of this appeal are assessed to the City of Toledo.
 JUDGMENT REVERSED.
Richard W. Knepper, J., Mark L. Pietrykowski, J., and Judith Ann Lanzinger, J. CONCUR.